HAZEL *v.* SHARUM.

Opinion delivered October 27, 1930.

*J. G. Waskom,* for appellant.

*Cunningham & Cunningham* and *G. M. Gibson,* for appellee.

McHANEY, J. Appellants have correctly stated the case as follows: "On April 1, 1922, M. W. Hazel, Wilmer Smith, C. A. Dawson, L. V. Ritter, N. J. Hazel, C. E. Causey and T. J. Sharum were directors of the First National Bank of Marked Tree, Poinsett County, Arkansas, T. J. Sharum being president and N. J. Hazel, vice president, and C. E. Causey, cashier. A short time prior to said date of April 1, 1922, the bank examiner found that the capital stock of said bank had been impaired as the result of which the persons named executed and delivered to said bank their promissory note in the sum of $30,-304.91, dated April 1, 1922, and payable 60 days thereafter. On October 19, 1922, M. W. Hazel paid on said note the sum of $12,500 and one G. H. Williams paid enough in addition thereto to discharge about one-half of said note, leaving about the sum of $15,000 due and payable thereon. In January, 1923, T. J. Sharum, president of the bank and one of the signers of the note, died and J. J. Sharum and Mrs. Myrtle Meriwether, appel-

lees herein, succeeded to the estate and obligations of the said T. J. Sharum. Subsequent to the death of the said T. J. Sharum, the bank had made several requests upon the appellees to pay the remainder due on said note, and after various negotiations and conferences between appellees and officers of the bank, appellees, on April 19, 1923, paid the remainder of about $15,000 due on said note and took an assignment thereof signed by N. J. Hazel, cashier. On May 30, 1927, appellees filed this suit against the persons who had signed said note, praying for the recovery of the amount appellees had paid on said note.''

Appellants Ritter and Dawson answered, denying the allegations of the complaint, and, in addition, alleged that the appellees paid the balance due on the note on April 19, 1923, and that they did not bring their action within three years from that date, and, consequently, the action was barred by the statute of limitations. There was a default decree rendered against Hazel, Smith and Dawson. M. W. Hazel, having been discharged in bankruptcy, the case as to him was dismissed. The court entered a decree against appellants Ritter and Dawson in the sum of $3,302.34 each, with seven per cent. interest per annum.

The only question presented by this appeal is whether the appellees' cause of action was barred by limitation at the time suit was instituted. Appellants contend that the action is a simple suit for contribution based on an implied obligation, and that the three-year statute (§ 6950, C. & M. Digest) applies. On the other hand, it is the contention of appellees that they had, first, a right of contribution as against the other makers of the note who did not contribute to its payment; and, second, had also the right to be subrogated to all the rights of the First National Bank of Marked Tree in and to the note which they paid; and that their action is based on the note itself, and is governed by the five-year statute of limitation (§ 6955, C. & M. Digest).

All the signers of the note in question were joint obligors. They were jointly and severally liable to the bank for the whole amount of the note. Each was liable for the whole amount. T. J. Sharum, appellees' ancestor, during his lifetime, and his estate, after his death, was bound for the full amount. After his death, on April 19, 1923, appellees paid the balance due on the note, $15,000, took an assignment thereof, and took down the valuable collateral deposited by T. J. Sharum to secure the note. This was a payment of an obligation for which the estate of T. J. Sharum was primarily liable. He was liable as a principal and not as a surety, except in the sense that all the signers were liable for their *pro rata* part of the debt, and that each was surety for the other on their *pro rata* share of the indebtedness. Having paid the debt to to bank for which their testator, or intestate, was primarily liable, we are of the opinion that the assignment of the note to appellees was ineffectual in preserving to them a right of action based on the note, which the bank had, while the note was in its hands. In other words, that appellees were not subrogated to the rights of the bank to bring a suit on the note against the other joint makers. They had paid an indebtedness that was their own, as it is conceded that they had succeeded to all the estate and obligations of said T. J. Sharum. Having paid an indebtedness for which they were primarily liable, it is difficult to perceive on what principle they could be said to be subrogated to the rights of the bank to maintain an action on the note, and we hold that they were not, except to enforce contribution. Here the appellees, having paid the whole amount of the debt for which all were jointly liable, were entitled to maintain an action for contribution against the other joint makers of the note, not on the note, but on the contract which the law implies, an obligation worked out by courts of equity in order to do exact justice between the parties. This court in *Cooper* v. *Rush*, 138 Ark. 602, 212 S. W. 94, said: "The right of action for contribution accrues when one surety

pays more than his share of the common liability. In most of the cases it is said that the contract for contribution between sureties is one which the law implies for their mutual protection and indemnity. Nearly all the cases agree, however, that no cause of action arises until payment by one of their common debt, and the statute of limitation begins to run against an action to enforce contribution at the time of such payment. *Woods* v. *Leland,* 1 Metc. (Mass.) 387, and *Mentzer* v. *Burlingame* (71 Kan. 581) 81 Pac. 196, and case note. Numerous decisions which we have read are cited in the note and support the principal case." The three-year statute of limitations was held applicable. The same rule was applied and followed in *Pennington* v. *Karcher,* 171 Ark. 828, 286 S. W. 969. See also *Lingo* v. *Swicord,* 150 Ark. 384, 234 S. W. 264. We think the principles announced in these cases, especially in *Cooper* v. *Rush* and *Pennington* v. *Karcher,* are controlling here. It is true that there was no assignment of the instruments in these cases to the parties plaintiff, but we are of the opinion that this does not alter the situation. When appellees paid the debt on April 19, 1923, the right of action for contribution accrued, and, being an implied obligation, one not in writing, the three-year statute controls, and was barred April 19, 1926. Not having been brought in that time, but more than a year later, appellants' plea of the statute as a bar to the action should have been sustained. Numerous cases are cited by learned counsel for appellees to the general effect that when a note shows that the person paying it is a surety only, an assignment of the note to him does not operate as a discharge thereof so as to prevent him from realizing on collaterals deposited by the principal debtor with the creditor, or to pursue any remedy of the creditor against the principal. We think these cases have no application to the facts in this case, for Sharum was not a surety merely, but a joint maker, obligor, or principal debtor.

The decree of the chancery court is therefore reversed, and the cause dismissed.