Agnes **PRESTIDGE**, Appellant,

v.

**W.R. PRESTIDGE, Appellee.***

No. 86–1751.

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 22, 1986.

Decided Jan. 22, 1987.

---

* This case was originally docketed in this Court as *United States of America v. W.R. Prestidge, Appellee, and Agnes Prestidge, Appellant,* a style based on the caption of the case in the District Court. We have changed the caption to reflect the fact that the United States is not a party to the appeal. The dispute before us is between Agnes and W.R. Prestidge.

William B. Howard, Jonesboro, Ark., for appellant.

David C. Shelton, West Memphis, Ark., for appellee.

Before McMILLIAN, ARNOLD, and BOWMAN, Circuit Judges.

ARNOLD, Circuit Judge.

This is an appeal from a decision of the District Court holding in part that Agnes Prestidge, one of two joint makers of a promissory note, would have to indemnify the other maker, W.R. Prestidge, for any sum the latter might be compelled to pay toward satisfaction of a judgment obtained on the parties' joint obligation. Because it appears that either of the parties to this appeal has a right of contribution should he or she be required to pay more than one-half of the amount necessary to satisfy the obligation, we reverse.

## I.

In 1978, Agnes and W.R. Prestidge obtained a loan from the Commodity Credit Corporation, an agency of the United States Department of Agriculture. In return, the Prestidges jointly executed a promissory note secured by certain real and personal property. The real property consisted of two acres of land in Poinsett County, Arkansas; the personal property consisted of farm storage and drying equipment, including two grain bins, located on that land. At the time they executed the note, Agnes and W.R. Prestidge were husband and wife. However, they were divorced in 1983, and as part of the property division, Agnes Prestidge was awarded the two acres of land mortgaged to secure the loan. Under the terms of the divorce decree, she took the property "subject to valid outstanding liens of record."[1]

In April 1985, the United States filed suit against Agnes Prestidge and W.R. Prestidge to obtain judgment on the promissory note, and to foreclose on the property mortgaged to secure the loan. The Prestidges conceded that they were wholly in default, and in July 1985, the District Court entered a consent judgment against them. The District Court noted, however, that a question remained about which defendant would be personally liable for any deficiency judgment, and delayed the foreclosure sale until a hearing could be held to resolve the liability issue.

Following the hearing on May 12, 1986, the District Court concluded that, because Agnes Prestidge had been awarded the realty in question subject to liens and mortgages which were outstanding in favor of the United States, she was personally liable for the entire amount of the judgment. Accordingly, in an order dated May 13, 1986, the District Court entered judgment in favor of the United States and against W.R. Prestidge and Agnes Prestidge, jointly and severally, in the sum of $16,024.41 plus interest and costs,[2] and further requiring Agnes Prestidge to indemnify W.R. Prestidge for all sums he might be compelled to pay toward satisfaction of the judgment. In addition, the Court entered judgment in favor of the United States on the decree of foreclosure on the two acres of land mortgaged to secure the loan, together with all improvements and appurtenances thereon. Agnes Prestidge now appeals from the District Court's decision insofar as it requires her to indemnify W.R. Prestidge.

---

1. The original Decree of Divorce stated:

   All of the lands hereinabove described which are subject to valid liens of record are declared to be encumbered with such liens and any disposition of the property hereinabove described shall be subject to valid outstanding liens of record[.]

Although the Decree was subsequently amended and modified, this provision—which applied not only to the two acres in question, but to over five hundred acres of land to be divided between the parties—was never modified.

2. According to appellant, the total obligation now exceeds $30,000.00.

## II.

The sole issue on appeal is whether the District Court erred in concluding that, as between the two joint obligors, Agnes Prestidge is solely liable for the entire amount of the judgment. Appellant concedes that she is jointly and severally liable to the United States on the note and resulting judgment. She further concedes that all proceeds from the foreclosure sale of the mortgaged property should be applied toward satisfaction of the judgment, and that she is not entitled to contribution for any sums so realized. Appellant contends, however, that she and W.R. Prestidge are jointly and severally liable for any deficiency remaining after proceeds of the sale are credited toward the judgment debt, and that either party paying more than one-half of the deficiency is entitled to contribution from the other party. We agree.

The trial court apparently concluded that Agnes Prestidge was personally and solely liable on the joint indebtedness simply because she took the property securing the obligation "subject to valid liens of record." However, the Supreme Court of Arkansas long ago established that

> [t]he acceptance of a deed subject to a specified mortgage, does not imply a promise on the part of the grantee to pay the mortgage debt. If the deed contains a stipulation that the property is subject to a mortgage which the grantee agrees to pay, then a duty is imposed on him by the acceptance, and the law implies a promise to perform it, on which promise, in case of failure, assumpsit will lie. But here no express agreement is proved that the defendant would become personally liable, and no facts from which such an agreement can or ought to be implied.

*Patton v. Adkins*, 42 Ark. 197, 199–200 (1883). In other words, the mere conveyance of property "subject to" a mortgage

or lien does not impose liability on the grantee for the payment of that mortgage or lien absent some indication that the grantee has agreed to assume that obligation. See, *e.g., Hood v. Young*, 178 Ark. 439, 442, 11 S.W.2d 767, 768 (1928); *Fretwell v. Nix*, 172 Ark. 230, 233, 288 S.W. 8, 9 (1926). In the present case, the record contains no indication that Agnes Prestidge either agreed to assume—or was otherwise required by the Decree of Divorce to assume—sole liability for the debt in question.

In support of its conclusion, the District Court relied upon *Crosser v. Crosser*, 121 Ark. 64, 180 S.W. 337 (1915), and *Hackett v. Hackett*, 278 Ark. 82, 643 S.W.2d 560 (1982). We cannot agree that either of these cases supports the District Court's ruling.[3]

*Crosser* involved a challenge to the division of property made upon the dissolution of the Crossers' marriage. As in the present case, various tracts of land to be divided between the parties were subject to outstanding mortgages which had been executed by both the husband and wife. One issue was whether the wife was entitled to receive the land allocated to her free of any encumbrance, or whether she took it subject to the mortgage. The Arkansas Supreme Court concluded that:

> The mortgaged lands having been divided in kind, the husband and the wife each take their interest subject to the mortgage. If the mortgage indebtedness equals the value of the land, then neither takes anything of value by the division, but the interest of each is subject to the mortgage and the value of that interest depends on the proportion which the indebtedness secured bears to the value of the land. Of course, the mortgagee can look to the land as a whole for the satisfaction of his debt. *This indebtedness*

---

**3.** Although we generally defer to a district court's interpretation of state law, we are not bound by that interpretation, and "must reverse if we find that the district court has not correctly applied local law, or if such interpretation of state law 'is fundamentally deficient in analysis or otherwise lacking in reasoned authority.'"

*Gillette Dairy, Inc. v. Mallard Manufacturing Corp.*, 707 F.2d 351, 353 (8th Cir.1983), *quoting Ancom, Inc. v. E.R. Squibb & Sons, Inc.*, 658 F.2d 650, 654 (8th Cir.1981). Here, our study of the precedents leaves us with the definite and firm conviction that the District Court was mistaken.

*has not been paid, but when it is paid, if the payment shall not be made in the proper proportion, then the right of contribution will exist in favor of the one who pays more than his or her share.* No such question has yet arisen in this case, and we need not discuss it further, except to say that the rule for ascertaining the share to be paid by the wife is stated in the case of *Salinger v. Black,* 68 Ark. 449, where the personal property of an estate had been used to discharge an encumbrance upon the lands, out of which the widow's dower had been carved, and in which case it was held that the general creditors of the estate had a right of contribution against the interest so assigned the widow.

121 Ark. at 70–71, 180 S.W. at 339 (emphasis added).

*Crosser* thus does not stand for the proposition that a party taking land subject to an outstanding mortgage is necessarily liable for the entire amount of the obligation. Rather, it expressly recognizes that a right of contribution exists between a husband and wife in a divorce action when one party is required to pay more than his or her share of the indebtedness owed against land taken subject to a mortgage. *Crosser* is not inconsistent with the principle enunciated in *Patton v. Adkins,* or with Arkansas case law generally holding that when a maker of a promissory note upon which others are jointly liable pays the entire obligation, he is entitled to proportionate contribution by the other joint makers. See, *e.g., Halford v. Southern Capital Corporation,* 279 Ark. 261, 263, 650 S.W.2d 580, 582 (1983) (citing *Hazel v. Sharum,* 182 Ark. 557, 32 S.W.2d 315 (1930)); *Thorsen v. Poe,* 123 Ark. 77, 81, 184 S.W. 427, 428 (1916).

*Hackett,* the other case relied upon by the District Court, also involved challenges to the distribution of marital property in a divorce action. Among the issues addressed in *Hackett* was the trial court's failure to divide the parties' outstanding debts. The Arkansas Supreme Court held that while it was not error to refuse to divide the debts, they should have been considered in deciding questions of alimony, child support, and the division of property. The Court then recited a number of general principles that apply to the debts of divorcing parties, citing *Crosser v. Crosser* for the proposition that "[a]n award of realty to the wife, silent as to who shall pay the mortgage, is an award subject to the mortgage." 278 Ark. at 85, 643 S.W.2d at 562. *Hackett* does not further discuss the consequences of taking realty subject to a mortgage, nor is it clear that Mrs. Hackett was actually awarded any realty outright. The opinion indicates only that she was granted possession of the family home, and that she was required to use part of the child-support payments to make mortgage, tax, and insurance payments. *Hackett* thus does not address the question at issue in the present appeal: whether a party taking property subject to a mortgage is solely liable for the entire debt.

Even appellee concedes that, under *Crosser,* a right of contribution exists when a party to a divorce action pays more than his or her share of the indebtedness owing on land taken subject to a mortgage. Appellee nevertheless maintains that the trial court should be affirmed based on the formula used in *Salinger v. Black,* 68 Ark. 449, 60 S.W. 229 (1900), referred to in the *Crosser* opinion as providing the rule for ascertaining the proportionate share to be paid by the wife. In *Salinger,* the general assets of an estate were used to discharge the encumbrance on lands assigned to a widow as dower. As a result, assets that should have been used to pay the debts of the estate were used to redeem the lands. The Arkansas Supreme Court noted that the widow should have taken her interest in the lands subject to the mortgages, and that the creditors, who had in effect redeemed the mortgages, were entitled to be reimbursed. The Court stated:

[The widow] is not entitled to hold dower in the lands free of charge, unless she pays her proportionate and equitable share of the sum paid to redeem. That share can be ascertained by finding out what part of the total value of all of the

lands encumbered by the mortgages the value of the estate in fee in so much thereof as was assigned to the widow is, and by setting apart such part of the sum paid to redeem to the lands allotted to the widow.

68 Ark. at 458, 60 S.W. at 232. Appellee argues that, under the reasoning in *Crosser* and *Salinger*, Agnes Prestidge is obligated to pay the entire indebtedness because she received one hundred per cent. of the two acres encumbered by the mortgage, and therefore her proportionate share of the mortgage debt is one hundred per cent.

We cannot agree that *Crosser* and *Salinger* support this conclusion. Nor does either case address the issue of personal liability for any deficiency owed after proceeds of a foreclosure sale are applied to satisfy a debt. The issue in *Salinger* was what share of the sum improperly paid to redeem mortgaged realty the widow would have to pay if she wished to retain a dower interest in certain lands allocated to her. It does not appear that the widow was a co-maker and jointly and severally liable, as are the parties here. Indeed, the Arkansas Supreme Court noted in *Salinger* that the mortgages "were a burden on the lands, and the payment of them by [Mrs. Salinger] was not a personal debt." 68 Ark. at 457, 60 S.W. at 232.

Furthermore, in *Crosser*, the Court specifically stated that the mortgagee could "look to the land as a whole for the satisfaction of his debt," but that if the parties paid the indebtedness, "the right of contribution [would] exist in favor of the one who pa[id] more than his or her share," that share to be determined by using the rule set forth in *Salinger*. 121 Ark. at 71, 180 S.W. at 339. This statement suggests that the Arkansas Supreme Court was taking into account the entire mortgage indebtedness of the Crossers at the time of their divorce, and anticipating that the proportionate share of the total indebtedness each would have to pay would depend upon the value of the property allocated to each, as compared with the total value of the mortgaged lands divided between them.[4] That is not the situation in the present case. The debt at issue here does not represent the total amount of the Prestidges' mortgage indebtedness at the time of their divorce, nor do the two acres in question represent the total value of the lands divided between them. As noted earlier, the Prestidges owned over 500 acres in Poinsett County, all of which was apparently also subject to a valid mortgage lien in favor of the Poinsett Production Credit Association. The Decree of Divorce as amended provides that each of the parties shall be responsible for payment of one-half of the obligation secured by that lien, including principal, interest, and any other legitimate charges. We see no reason why, under the applicable case law, the Decree of Divorce, and general equitable principles, any deficiency judgment in the present case should not be treated essentially the same way.

Accordingly, we reverse the judgment of the District Court insofar as it requires Agnes Prestidge to indemnify W.R. Prestidge for any sums he may be compelled to pay toward satisfaction of the parties' joint and several obligation. This case is remanded to the trial court with directions to enter a judgment providing that if either of the parties to this appeal pays more than one-half of any deficiency remaining after the proceeds of the foreclosure sale are applied to the judgment debt, he or she shall be entitled to contribution from the other party.

It is so ordered.

---

**4.** This would seem to be the case because, under the formula stated in *Salinger,* the wife's proportionate share was to be ascertained by comparing the value of the lands assigned to her with the total value of all the mortgaged lands redeemed with assets of the estate.